BC One 161 and call seven. State 1101 ah man, I'm very good morning, Janda. Mr Orenstein. Good morning, your honors. So So as we see it, there are two big basic issues here. Whether King face new and additional charges, thereby triggering a full speedy trial for false rejoinder issue and the issues of state raises about timeliness. I was a special question. If we were to find that the charges charge that was added did not constitute new and additional charges within the meaning of legal precedent, would that defeat the claim of ineffective assistance? Well, yeah, because if there would be no speedy trial claim and therefore no, no ineffective assistance time to go from. So in that sense, yes. Um, so so so so so so that is a question whether whether whether it's new and additional. And the threshold question to that is whether the second indictment alleged new material faster than the first indictment. And the answer to that question is yes, it created the the activated charge that alleged bodily harm, which was not alleged in the original indictment. So it didn't give him no sufficient notice. No, it did not come to sufficient. This did not give a sufficient note for quite when you look and notice you look at you look at the terms of the indictment. That's that's clear. Woodrum and carried steps. And that's all that. That's that's all the notice that is legally relevant. Whether whether the indictment whether there's notice in the indictment. So you're right. The case is going to go ahead. The case will turn on that issue. But as I'm reading the charge, we're talking about the same set of operative facts. So we're not in terms of the same incident, same location, time and place, but not the same result is what I would say. There's a there's a there's a new result of the of the of the act. Are you referring to the bodily bodily harm allegation, which is what made an aggravated charge? Yes. Was there ever any question that she had a significant chuck on her chin, you know, throughout these proceedings? I don't throughout throughout the proceedings. I don't think so. But that that under Phipps and Woodrum, I would say that is not relevant. The question is, are you are you surprised by the indictment? If the indictment creates new facts, a new element and a new enhanced charge, that is all you need. Are they surprised by the indictment or surprised by the penalty as a result? Well, they're surprised by the by the that that's what the penalty is. One factor. The indictment, the indictment creates new facts and a new penalty. And those things together make make it even more stronger that that that is a new and additional charge. Well, the new allegation was the bodily harm. That's correct. The charge. It wasn't a new charge, was it? It was. It goes. It's criminal sexual assault and aggravated criminal sexual assault. It's a different statute and a different charge with a different penalty. But it's the same incident. They added additional allegation. Correct. It was the same. It wasn't a different incident. It wasn't like two things at two different times in two different places. In that sense, it was not a different incident. They were both by the use of force. What? Both by the use of force. Well, either force or threatened or a threat of force, I believe, I believe is the language. I could be wrong. I mean, I thought the indictment initially was knowingly and by use of force, and then the later indictment was knowingly and by use of force. So they both start with use of force. But by use of force. But one does not necessarily create bodily harm by use of force. So I would argue it is a new and additional charge for that reason. It is not the same. It is not the same text that alleges new facts and those special material facts because they aren't related to the original and they create a new offense with a higher penalty. You know, I'm going to come back to the penalties. The penalties, didn't our Supreme Court in the Phipps case say that it doesn't really matter if the penalties are different? That's not relevant? No, I think they said because the penalties were the same, I think, or maybe I'm remembering wrong, because the penalties were the same, that was one reason it was not a new and additional charge. Phipps was a DUI case, if I remember correctly, and the legislature had rejiggered the – they got rid of reckless homicide, I believe it was. But I'm pretty sure, although I could be wrong, that the new statute was not – it was the same class of offense. Here's what I think they said. I think they said whether the elements or possible penalty for subsequent charge, as I think Justice Gossett is alluding to, are different from the original one is simply not dispositive of whether it's new and additional. Merely because they added an element or they added – the penalty is now increased, that in and of itself is not dispositive of the issue. That is true, but I think what is dispositive under Phipps – well, I think first of all they were saying that – I have to go look at the statute – but whether it was not dispositive because the elements and the facts alleged were the same. Each alleged a driving while intoxicated, a collision from that DUI, and a death. And that was dispositive. And what was included in that was the death, which was the result. I think what we're only trying to clarify is you made a good argument. Obviously, the penalty was enhanced and there's an additional element. I think what we're saying is under the case law that in and of itself alone would not be sufficient, just that mere fact that the penalty was enhanced. I'm sorry. Could you say that again? I'm sorry. I think what we're saying is even though there was the additional element, even though the penalty is now increased by virtue of the additional allegation, those two things standing alone don't carry the day in and of themselves. That's what Phipps was saying. You can't just say, okay. I certainly would agree that the increase of the penalty alone would not – because that's exactly what Stax does. I would have to go back and maybe I'll say a rebuttal. I'm not sure that the – I'm not sure about that and the – I lost my train of thought – the change in the element. But certainly here we have the change in the element. We have new facts and we have an increase. And so that would distinguish it from Phipps in a sense. All right. The Supreme Court in Phipps said that the critical point of our speedy trial analysis is not whether the State charged under the correct version of a statute, but whether the original indictment gave defendant adequate notice to prepare his defense. Right. Where – if they knew – if the defendant and his counsel knew in the beginning that it was knowingly and by use of force, that was the same in both indictments, what would cause them not to recognize – and – pardon me – and they knew that she had a bruise on her chin or she had gotten, you know, hits across the chin, what's new and what couldn't they prepare for? Well, because, Your Honor, public defenders and I think in most cases private lawyers, they're busy and they need to respond to what they need to respond to. They knew – I'm sure they saw a police report that – and the State mentioned the probable cause, that there were facts about the chin, but that was not charged. They did not know that they would have to respond to that to disprove it, to discredit it. So, I mean, you can have all kinds of things in police reports. The defense and counsel is not expected to respond to everything in a police report. They're expected to respond to the charges. So a public defender could look at the police report and the charge together and say, okay, yes, I see in the police report that there is a bruise to the chin, but they're not alleging it. I don't need to go investigate that. I don't need to go get the medical records because they're not alleging that. That's the difference. The defense responds to the charges, not to the police reports. That would be my answer to that. Well, but what is the leap of faith or what is the surprising defense requirement where you say somebody with the use of force did this? Okay. So, obviously, in the preparation and preparing and talking to the defendant, there was a use of force. That's correct. Maybe it wasn't fleshed out specifically that it caused bodily harm. That's correct. But is the bodily harm resulting from the use of force a major surprise? Sure. I mean, it could be. It could be. I mean, I think it's clear from the language in FIPS that you only look to the language of the charges. You don't look to police reports and such. And is it a surprise? It might not be a surprise, but it might not be true. I mean, you can shove somebody and not cause any bodily harm. Use of force does not necessarily create bodily harm. I don't disagree with you. It would be hard to call for me if the indictment originally said nothing about the use of force. And you're going, whoa, what did this use of force come up with? But at the allegation, your client is charged with using force in committing the offense. Right. So you know there's an allegation of force. Well, what happened with this force? What was involved here? Right. I don't know that that's such a leap of faith completely taking somebody by surprise. Well, but surprise is in a certain context here. It's not all facts and circumstances of surprise. In FIPS and whatever they talk about, you look at the language of the charging instrument. And so they may not have been surprised. In a sort of a practical sense, they may not have been surprised when it came out. But the surprise is that they're charged with it. And now they need to go, for example, let's go look at the medical records. You know, the police report said there's a bruise on the chin. Okay. But the defense is not required to accept that. They can go, you know, look at medical records and say, well, let's look at medical records. Does it say there's a bruise on the chin? And if not, then they're prepared to challenge the police report which says there's a bruise on the chin. And in order to do that, they need to know what the charge is. That's the surprise. Defendant never alleged or never said that this was – well, let's put it this way. Defendant said it was consensual. He never even talked about the issues of force or the issues of other – of injury. He simply said this was consensual sex. So how does that figure in – how does this new indictment figure into his defense? He just said it was consensual. It never was in the backseat of his car. My answer is that you don't look at it because fits the word. So you look to the language of the charging instrument. And probably not in the facts of this case particularly, but in another case, a defendant might decide to raise a different defense if – based on the language of the charging. Charging instrument, you know, changes if it had not been – if there had not been an amendment to the charging instrument. So I don't think it's relevant what the client's defense was or what he said. So unless there are more questions on that, I will go through a couple of negligence. So a couple of negligence. It's really raised on three levels as I understand the State's argument. The first argument is that my client was – the original post-conviction deadline. Well, my client – a couple of negligence under Risley means more than – more than ordinary negligence and akin to recklessness. And my client was not recklessly missing the original deadline. He missed it because he was missing his document. He was missing – How many – how many times during the course of these proceedings was your client either transferred from facilities or moved around facilities? Do we know that from this record? I don't – I don't know one. I think he was – I don't know. I suspect he was at Pontiac the entire time, but I don't know that. Well, would that go – would his presence in the same place in some way go to how his records may have been mixed up with Mr. Hill's records or someone? No. The reason his records were mixed up is they were taken away from him and given to another – and mixed up with another inmate in the Pontiac – in the Pontiac – in the Pontiac records office or whatever office they used to do that. That's what happened. It's not a lock-down situation. It's not a transfer situation. So – so – so – but they did take away his records, and they lost them. And they lost them for four years. And that – and the deadline went by at that point. And if you look at his petition, it's a very document-based petition. There's a lot of transcripts. There's a lot of police reports. And if you look at the fellow inmate's petition, I mean, affidavit where he said he found the police – where he found – he found my client's – so he could not have filed his petition on the deadline. Now, the second point is the state argues that he filed it about one year after he filed his documents. So I have three things to say about that. First of all, the time he took – the year he took after he got the documents was less – not much less, but less than the time he lost between the time the documents were taken and the deadline passed. And the – he filed his petition about 12 months and 18 days after he got – after the other inmate discovered the documents. And it was over 13 months between the time his documents were lost and the deadline. So he really took only the time that he was taking. Second, I say this petition was far from boilerplate. It was a lot of work. It's 60 pages. In our brief, it says it's single-spaced. It's really one-and-a-half-spaced. But it's a very methodical, document-based petition from year to year to year. And it's not – it's certainly not boilerplate, and it's not something you just ask off. And so the third thing is the state costs my client, even apart from a couple of elections, from waiting – for waiting through the post-conviction proceeding to amend his petition. But it cites the law as saying there's a problem with that, first of all. And second of all, I would note that it was many years after your father's original petition that he raised – the claim we're raising. It was only about three weeks after he went pro se that he raised it. And that's – he went pro se. That was when he – that was the last time he had control – the first time he had control. And with that, unless there's any other questions, I'd ask this court to amend. Thank you. We're not the red light of the Supreme Court. You can finish your sentence. I should sort of let you go. Thank you. Thank you. Mr. Jacobs. Good morning again. I'm Barry Jacobs on behalf of the State of Illinois, as aptly in this case. Your Honors, the State is asking this Court to affirm the dismissal of this post-conviction petition on two bases without actually looking at the merits. I'm certainly prepared to answer questions about compulsory joint error and the speedy trial interplay. But the real issue here, the primary question, is whether or not the Court erred by finding that the petition was late filed. Mr. Jacobs, before you go all in on the forfeiture of the negligence, isn't it true that forfeiture is a limitation on the period? It's not a limitation on this Court, is it? That's correct. So we could overlook that in terms of merits, correct? Yes. Okay. I'm just suggesting at some point I'd like you to address whether or not this was a new and additional charge such that it was subject to compulsory employment. But the primary argument is that this defendant waited three years and three months to file his initial post-conviction petition on, I believe, February 22, 2010. He had filed a 214-01, hadn't he? He had filed a 214-01 in 2006. I think that's all February dates, February 2, 2006. And he did actually include transcripts that he claimed were missing. The Court didn't address that when it ruled on this, the timing of this. But this Court certainly could, and it could affirm on that basis alone. Well, do we have in the post-conviction record any information from the department about why he had his records taken? Or if, well, first, if he had his records taken, why and how they might have been mixed up? He had, I believe, in November of 2000 – I've got it wrong. In November of 2005, he filed grievances that his records and food were taken from his cell when he was discovered to have tobacco on his person during a walkthrough or something to that effect. The office of a fellow defender notified him, I believe in December of 2005, so just a month later, that those records had been found, and they were being held in the prison records office. His culpable negligence has shown he never made an effort at that point to file his petition and say the records are gone. Well, he was filing his 214-01.  Of course, he says now that he – and this is all evident from the record. This is not a credibility determination that the Court was making. This is all just evident from the record that he had these records or he was able to get these records, and that was reckless. He was culpably negligent for not pursuing the records after he received notice from – Okay. The records had been found. But now what's – He waited until 2009, and apparently he was contemplating a petition at that time. In fact, in his original petition, he did say he wanted to wait to file his post-commission petition because he wanted to wait until after his appeal was done. It's not unusual. So he did file his ineffective assistance and claims. This is not a case of upshot where this defendant didn't understand the procedure of what he needed to do. It's also not a case of upshot where he didn't have a meaningful opportunity to prepare this post-conviction petition. He chose instead to do a 214-01 petition when he had the records. He could have just as easily done this. When these records went missing, he was notified. It would be incumbent upon him to make some effort to find the records. Okay. So that's what the State's real issue is, that instead of filing a PC, he filed a 214-01, and it might have been better and more timely if he had addressed the issue. And then in 2017, he didn't file an amended petition. He filed a supplemental petition. This was after the State had already moved to dismiss his original PC, and he never provided any explanation about that. That's where he raises the instance to claim compulsory joint. He didn't do that until 2017. That's not just in 12 months, 18 days. That's almost 10 years. All right, but now he has raised the compulsory joint. The second basis is that he acted as his own counsel. So the State's second basis is that he can't show that he was at substantial deprivation of counsel because pretrial counsel didn't move for discharge. When he represented himself, I believe from September 25th, 2003, until trial occurred, both through trial and sentencing, but trial occurred December 1st, 2003. So a period of months where he could have brought a motion for discharge based on this pretrial violation, and he didn't, recognizing that, of course, the court can consider this. Did he have standby counsel for trial? Was that the issue? He did have standby counsel for trial. But not prior to that? I mean, nobody really was assisting him prior to that time during the pretrial process. He had counsel. Oh, he did? He had counsel that he, on September 25th, he successfully moved to represent himself. He had tried to have the court enter an order that counsel was ineffective, and the court refused to do that. That went on for approximately a year, and then September 25th, 2003, he finally said, well, I'm going to represent myself because I believe there's a conspiracy with my counsel in this case. But he was representing himself. But that's part of his allegation of ineffective is against pretrial counsel as well as appellate counsel, is it not? Yes. Okay. So when did exactly this 120 days expire after the second charge was filed? Was he still representing when that happened? The second. He was representing when the second charge was filed. And when the 120 days ran, was he still being represented by his pretrial counsel? He was not. I believe the 120 days on the original charges, because of all the continuances, would have run in October of the trial year, which was 2003. So in October of 2003, he had, because of September 25th, he became pro se. So he had been, yes, he had been represented by counsel. For most of that time, though, in fairness. Yes. Correct? But for a period of months he was not. And this is, you know, perhaps shows the danger of representing yourself. And the decision not to move for discharge, you know, could be seen in some ways as strategic on the part of counsel. Although it may have come to the fore when this new charge was filed. But this did give some, those old charges weren't disappearing. So this did give counsel some, perhaps, leverage if there was a clean negotiation to go on. But the overriding concern here is that he represented himself. He had the time and opportunity after he became his own counsel, September 25th, 2003, before trial to bring a motion under the Code of Procedure and move for discharge. Well, we can certainly look at this in hindsight. But isn't the reality in the real world, if a defendant has an attorney representing him up to a certain point, isn't he probably going to exceed and go along with that attorney, what that attorney is doing? He's not going to conduct a review in the real world, is he, of everything his attorney did to see if he did it right? And how realistic is that? Not usually. However, in this case, I think there are records in my support that he actually did conduct a review of everything the attorneys did. But that doesn't lessen the fact that he was representing himself for a period of almost three months, so he had the time and the opportunity to raise this in the trial court. And he did not do it. It would be similar to if another counsel, a private counsel, had taken over and not raised this discharge claim, the claim would be against the second counsel of Infective Assistance. And that's what's happened here, where he was representing himself. If there are no questions, I can turn to the new and additional charge element. That would be fine. Thank you. Phipps is clear that the critical inquiry is whether or not the indictment gave adequate notice for the defendant to prepare his defense. I hear the defense was always consent, and there simply wasn't any kind of surprise upon the filing of the superseding indictment. There wasn't a surprise as to what allegedly occurred or what she had alleged occurred. There wasn't a surprise with respect to that. Right. But your opponent indicates that, well, now we weren't going to have to defend against this bodily harm, but now we're going to have to, and now we get notice that, oh, they're raising bodily harm, and now we can't defend it because we need hospital records, we might need witnesses. What is your response to that? The defendant was always on notice that there was harm. In fact, prior to his arrest, when he was first confronted by detectives, he claimed that those injuries to the victim, Deborah Blue, were caused because she fell on a sidewalk. But would he have thought he had to defend himself of those allegations to bodily harm? Based upon the language of both of the indictments, the original and the superseding, that this occurred by use of force, it's hard to believe that he would be surprised that there was injury that he hit and knocked her to the ground in addition to sexually assaulting her. So it's the State's belief that, or position, that there was adequate notice that he was required to defend against some sort of injury to this victim, yes. There was discovery conducted in this case. There was discovery conducted. In fact, he was turned over to the defendant and began to represent himself. And some of the statements about this injury were in hospital records that I assume were part of the discovery. They were all tendered. The defendant chose to pursue, I don't actually recall his trial testimony well, but his theory was that there was, again, collusion and that evidence tags had been changed and that later became the subject of his 214-01 petition evidence tags about the semen that was found in the back of Deborah Kluge's automobile. But his defense, he would have anticipated his defense based upon the elements that were listed in the original and superseding indictment that there was bodily harm. But again, I want to reiterate, Fitz talks about the elements of penalty, but as the Court correctly noted, that's not dispositive. What's dispositive is whether or not a defendant had the opportunity or adequate notice to prepare his defense. Well, if we just look at the charging instrument, that's our first place to look, there is an addition, cause bodily harm. There is cause of compliance in the course of conduct caused bodily harm. Correct. No additional acts are referred to that. No, but how is that then, how do we overcome that in the big picture of how this went forward? Is it by the other language, by the use of force? In this case, it was by the use of force. It wasn't by the threat of force. It was by the use of force. By the use of force that he, I believe, hit and knocked her to the ground. Yes, I believe it's in the elements, and it's also in the, again, what Fitz found to be the critical inquiry, that he received adequate notice of the charge. And in the discovery, I assume she was also identified, the victim was also identified as a potential witness. She was. So it was not, that was not a surprise that she was going to testify. No, in fact, she did testify. Of course, then the next question is, and maybe it can't be answered, but why did it take so long? That wasn't clear to me from the record why the superseding indictment was filed. Basically six months later, I couldn't discern why. I know that, I'm not going to blame the defendant, but the defendant had a lot of different motions that proceeded, doing much on this case, motions for, to discharge his attorney. Well, there was about a year of time during this process where that was the primary issue, wasn't it, getting whether his attorney should be replaced or not. Yes. Well, that shouldn't have distracted the State. You're not saying that. No, I'm not saying that. It got distracted by the defendant's motions? No, that's not what I'm going to blame, Your Honor. I'm just saying that a lot didn't happen on this case very speedily. You're submitting the inadequate notice. It's the State's position that he had adequate notice. These charges were not new and additional based upon the elemental language and the fact that the discovery was tendered, that his own statements wouldn't be heard. The reason that he was arrested was that this was consensual sex and she sustained injury when she fell down on a sidewalk. It's hard to believe that he, given the elements of bodily harm or by use of force, and that he grabbed and knocked her down, that he couldn't anticipate. And certainly, we simply wouldn't have changed his defense in any way if he was tendered all of the records. Well, counsel says that that's really not relevant, what his defense was, because it could have been something different. Does Phipps really address that, or does Phipps just say prepare for trial? It just says prepare for trial, the ability to prepare. And there's nothing that impedes his ability to prepare in this case for these charges. If there are no other questions, I would just ask that you affirm the dismissal based on the presentation here. Thank you. Thank you. Good timing. Mr. Ornstein. Your Honor, I'd like to make two points. First of all, with regard to the 214-01 petition, if you look at the 214-01, it raises some of the same issues as the post-conviction petition, but not all of it. And it's a very, you know, pinkimentation, for want of a better word. I think it's six, seven, eight pages, double-spaced, as opposed to 60 pages, one-and-a-half-spaced. It doesn't include any of the police reports or documents that the post-conviction petition includes. It's a very different thing. Well, the issue I think is being raised is not that it's different, but at that time when he had knowledge of where his records were, why didn't he file a PC as opposed to a 214-01? He explained that. He explained that he didn't want to file until his direct appeal was over because he wanted to maybe raise the issue of ineffective depending how it all came out. And I think it's a very reasonable thing because you can forfeit it by not raising it. So, I mean, now if I were a fellow counsel, I would say, well, you know, he could file a successful petition because he didn't know. But, I mean, from his perspective as a pro se client, I think it's very reasonable to say, you know, I'm going to wait until I see the Rule 23 order or the opinion come out before I finish everything up. So, I mean, it may not have, I mean, obviously, you know, it may have been prudent or time efficient to have done everything beforehand. But in his position, he's sitting in prison. You know, he may feel that he had the time and he did not expect to lose his documents. So, I don't think that anything he did was reckless in that sense. That would be my answer to that. And the other thing, just, I mean, as far as FIPS be going, we'll back and forth the language about FIPS. I would point the Court to this language. It talks about the rationale. This is where the State points in its brief. The rationale for the rule centers on whether the defendant had adequate charges of the subsequent charges. And that's what the State talks about. But then FIPS says the focus is on whether the original charging instrument gave the defendant sufficient notice of the subsequent charges. So our position would be that the test, you don't look to what the defense is, because the defense, after all, can be formulated after a charging instrument is filed. It could be changed up until the last second in some cases. And you look to the charging instrument and the differences in the charging instrument. So unless there are any other questions, I ask this Court would reverse and amend. Thank you. Thank you, counsel. Thank you both for your arguments this morning. We will take the matter under advisement. We will issue a decision in due course. And we will now stand in recess to prepare for our next matter.